IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THOMAS H. FLUHARTY, in his
official capacity as Bankruptcy
Trustee, THOMAS J. JACQUEZ,
DIANA R. JACQUEZ,**

      **Plaintiffs,**

**v.**                    //    CIVIL ACTION NO. 1:14CV27
                                         (Judge Keeley)

**CITY OF CLARKSBURG, JAMES C. HUNT,
MARGARET H. BAILEY, MARTIN G. HOWE,
ADAM BARBERIO, H. KEITH KESLING,
JONATHAN R. DAVIS,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. NO. 67]

Pending before the Court is the motion to dismiss the second amended complaint (dkt. no. 67) filed by the defendants, the City of Clarksburg ("Clarksburg"), James C. Hunt ("Hunt"), Margaret H. Bailey ("Bailey"), Martin G. Howe ("Howe"), Adam Barberio ("Barberio"), H. Keith Kesling ("Kesling"), and Jonathan R. Davis ("Davis"). For the following reasons, the Court **DENIES** the motion.

### I. PROCEDURAL BACKGROUND

On May 31, 2013, Thomas J. Jacquez and Diana R. Jacquez (collectively, the "Jacquezes") filed a petition for bankruptcy, which identified this lawsuit as an asset. Thomas H. Fluharty ("Fluharty"), a named plaintiff in this matter, was appointed by the United States Bankruptcy Court as the Jacquezes' bankruptcy trustee and filed this case in February 2014.

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.                1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

In August 2014, the parties sought a stay to permit them to try and settle their dispute. The Court granted the stay, settlement discussions ensued, but ultimately were unsuccessful. Fluharty then filed a second amended complaint, which asserted a 42 U.S.C. § 1983[1] claim under theories of municipal liability ("Count One"), official, individual, and supervisory liability ("Count Two"), and conspiracy liability ("Count Three"). He also alleged a count for racketeering liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(c) ("Count Four"), and sought a declaratory judgment under 28 U.S.C. § 2201 ("Count Five").

After the Court lifted the stay in the case, the defendants moved to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). In their motion, they contend (1) that the Jacquezes failed to exhaust their administrative remedies, and (2) that Fluharty's claims are time-barred by both the statute of limitations and also the doctrine of laches.[2]

---

[1] Specifically, Fluharty asserts violations of the Jacquezes' Fourth, Fifth, and Fourteenth Amendment rights.

[2] The defendants initially argued that Fluharty lacks standing to assert any claims on behalf of other property owners, and that any claims arising from certain criminal statutes are not cognizable. In his response memorandum, however, Fluharty explains that "no claims are being asserted on behalf of others or for causes of action under the federal criminal statutes cited as predicate acts . . . ." (Dkt. No. 69 at 16).

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.　　　　　　　1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## II. FACTUAL BACKGROUND

The Court construes the facts relevant to the defendants' motion in the light most favorable to the non-movant, Fluharty. See Kendall v. Balcerzak, 650 F.3d 515, 522 (4th Cir. 2011). The Jacquezes owned numerous properties in Harrison County, West Virginia, which they rented to "low income, elderly, and disabled tenants." (Dkt. No. 65 at 4). The dispute in this case arises from the alleged efforts of city officials in Clarksburg and management employees to circumvent the law in order to demolish residential properties such as those owned by the Jacquezes. Fluharty alleges that Clarksburg's management employees stood to profit -- financially and politically -- from their purportedly unlawful conduct.

In 2000, the West Virginia Housing Development Fund ("WVHDF") allocated funding for its Demolition Loan Program ("DLP"), a program designed to "provide municipalities with financial resources to demolish older, residential rental properties, many of which were being subsidized under various HUD programs." Id. at 13 (internal quotation marks omitted). The DLP explicitly recognized that "[h]omes which remain owner-occupied and in good condition suffer from lower appraisal values due to the condition of their neighbors." Id.

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.**  1:14CV27

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Hunt, who was an elected member of the City of Clarksburg Council (the "City Council") until 2012, was also a DLP area manager responsible for projects in the City of Clarksburg. As such, he informed other public officials in the City of Clarksburg about the DLP and "the availability of public funds to demolish residential rental properties." Id. at 15.

In September 2000, Hunt worked with Howe, Clarksburg's manager, to apply to the WVHDF for a $250,000 loan for the demolition of fifty homes under the DLP. In December 2000, the WVHDF awarded Clarksburg $150,000 for the project. Since then, with the assistance of Hunt, Clarksburg has applied for five additional DLP loans, and has received loan awards totaling $1,450,000.

Fluharty alleges that "Hunt benefitted personally as a result of his public employment as WVHDF's Area Manager for Clarksburg and his direct involvement as Defendant Clarksburg's elected public official and member of its council." Id. at 25-26. He further alleges that "Hunt personally benefitted from his public employment and elected position by promoting himself as an expert consultant for hire to other public entities considering the use of public funds for urban renewal projects and demolition of dilapidated residential properties." Id. at 26. Finally, he alleges that

4

"Hunt benefited [sic] others by directing and encouraging official actions be taken by Defendant Clarksburg in its continued participation in WVHDF's Demolition Loan Program and the demolition of hundreds of residential properties." Id.

In June 2001, Clarksburg was "unable to meet the loan requirements imposed upon it by the WVHDF,"[3] and requested the assistance of the Clarksburg Urban Renewal Authority ("CURA").[4] Id. at 16. CURA is a public body that was created by the City Council in 1961 pursuant to West Virginia's Urban Renewal Authority Law, W. Va. Code § 16-18-1, et seq. CURA, in turn, created the Urban Renewal Plan for Demolition of Dilapidated Residential Structures for the City of Clarksburg (the "Urban Renewal Plan").

Fluharty contends that the Urban Renewal Plan is illegal because it fails to identify "the area of the urban renewal project," in accordance with state statute.[5] (Dkt. No. 65 at 17) (internal quotation marks omitted). He asserts that it "merely identified the project area as including 'scattered sites located

---

[3] Fluharty's second amended complaint does not specify which requirements were too stringent.

[4] Although Fluharty's second amended complaint says little regarding the specifics of the arrangement between the City of Clarksburg and CURA, it does allege that the City of Clarksburg assigned the obligation on the loan to CURA.

[5] The statute cited by Fluharty is W. Va. Code § 16-18-1, et seq.

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.**  1:14CV27

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

within the incorporated area of Clarksburg, at which dilapidated residential structures exist, which sites have been declared by Clarksburg to be blighted areas in need of redevelopment.'" Id. He further alleges that Barberio, Clarksburg's code enforcement officer, as well as Hunt and Howe, "knew, or should have known, that CURA's ad hoc urban renewal plan was unlawful." Id.

Fluharty also contends that Clarksburg and the City Council unlawfully amended the City Ordinances by: (1) authorizing Howe, rather than the City Council, to appoint members to the Building Code Appeals Board ("BCAB"); (2) reducing the membership of the BCAB from five to three members; (3) granting building inspectors unreasonable right to enter and inspect dwellings; (4) blocking the opportunity for property owners to repair their properties while under a demolition order; and (5) removing the Clarksburg's notice requirement of its right to file a lien against any property subject to code enforcement action. Further, Clarksburg's building code officials and building inspectors were not trained, qualified, or certified in accordance with W. Va. Code § 87-7-1, et seq., a fact Fluharty contends the defendants knew or should have known.

Finally, Fluharty contends that, between April 2010 and March 2013, Barberio and his two subordinate building code officials, Kesling and Davis, ordered the demolition of, or scheduled for

6

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.         1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

demolition, eight separate properties owned by the Jacquezes.[6] Allegedly, these actions violated the West Virginia Building Code, and the defendants relied on false and misleading claims of building code violations to accomplish the demolition.

Fluharty also alleges that Bailey, Clarksburg's then mayor, sanctioned this conduct when she signed a resolution "authorizing and empowering Defendant Clarksburg's officials and employees to continue participating in WVHDF's Demolition Loan Program and to receive its loan award in the amount of $400,000." (Dkt. No. 65 at 24). Moreover, Bailey "personally benefitt[ed]" from certain demolitions. (Dkt. No. 65 at 25).

In December 2013 and January 2014, the Jacquezes and several other affected property owners filed complaints against the defendants with the West Virginia Fire Commission. In June 2014, the Fire Commission issued its own "Consolidated Complaint and Notice of Hearing" against several defendants, including the City of Clarksburg, Barberio, Kesling, and Davis,[7] based on its determination that these defendants "knowingly utilized an unlawful

---

[6] Fluharty appealed one demolition order to the three-member BCAB, which voted 2-1 to uphold the order.

[7] Fluharty has adopted the Fire Commission's allegations of fact and conclusions of law in his second amended complaint. (Dkt. No. 65 at 27).

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.          1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

building code, through the actions of unlawful [building code officials], to selectively target specific properties and property owners, to divest them of real and personal property without adequate due process of law." (Dkt. No. 65-1 at 5). Additionally, the defendants "utilized the Clarksburg building code program to directly and/or indirectly enrich themselves and others through the use of public funds and the unlawful building code program." Id.

## II. STANDARD OF REVIEW

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to

state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

### III. DISCUSSION

**A.   Statute of Limitations/Laches**

In their motion to dismiss, the defendants argue that the majority of Fluharty's claims, as they relate to certain properties, are time-barred under the two-year statute of limitations prescribed by W. Va. Code § 55-2-12(a), and the

9

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.**            **1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

doctrine of laches,[8] which are both affirmative defenses identified in Fed. R. Civ. P. 8(c). As noted above, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman, 494 F.3d at 464.

This case does not present one of the "relatively rare circumstances" described in Goodman, 494 F.3d at 464. In response to the defendants' statute of limitations argument, Fluharty contends that the discovery rule, as well as the continuing violation and fraudulent concealment doctrines, preclude dismissal. (Dkt. No. 69 at 11). Regarding laches, he argues that the defendants are unable to establish either undue delay or prejudice. In the Court's view, these issues will require further evidentiary development before it may properly rule on them.

---

[8] Notably, laches is typically a state law doctrine that applies to claims in equity. See Dunn v. Rockwell, 689 S.E.2d 255, 267 n.11 (W. Va. 2009). Notwithstanding, the defendants contend that "the doctrine of laches precludes Plaintiffs from asserting any claims associated with the demolition of the property at 1513 and 1515 Hamill Avenue or 661 Mulberry Avenue." (Dkt. No. 68 at 14). Because Fluharty seeks damages under § 1983 and RICO, it is not clear that West Virginia's laches defense could bar his claims in the manner argued by the defendants.

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.**            **1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**B.  Failure to Follow Proper Appellate Procedure**

Relying on Article 1720.05 of the City of Clarksburg's municipal code, the defendants also contend that the Jacquezes were required to appeal any building code enforcement decision to the BCAB before filing suit.  Had they received an unfavorable administrative ruling, the defendants contend the Jacquezes then were required to file a petition for a writ of certiorari with the Circuit Court of Harrison County for review of the BCAB's decision. See W. Va. Code § 53-3-2.  Because Fluharty, as the bankruptcy trustee, sued directly in federal court, the defendants argue that "all such causes of action fail as a matter of law as the [Jacquezes] never utilized the proper avenues to challenge said actions."  (Dkt. No. 68 at 5).

Well-settled case law directly contradicts the defendants' argument.  In Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 516 (1982), the Supreme Court of the United States reaffirmed its prior holding that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  See also Steffel v. Thompson, 415 U.S. 452, 472-73 (1974); McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill., 373 U.S. 668, 671 (1963); Monroe v. Pape, 365 U.S. 167, 183 (1961)).  Nor do land use cases such as this one present

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.         1:14CV27**

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

an exception to this rule. See Front Royal & Warren Cnty. Indus. Park Corp v. Town of Front Royal, Va., 135 F.3d 275, 283 n.3 (4th Cir. 1998); Timmons v. Andrews, 538 F.2d 584, 586 (4th Cir. 1976).

The defendants' reliance on Bess v. Kanawha Cnty. Bd. of Educ., No. 2:08CV1020, 2009 WL 3062974 (S.D.W. Va. Sept. 17, 2009), to argue otherwise is misplaced. There, Judge Goodwin recognized that a § 1983 claim that could have been brought under the Individuals with Disabilities Education Act ("IDEA") was subject to exhaustion. See Bess, 2009 WL 3062974 at *4. This was because, "under the IDEA, parents asserting a violation of the IDEA must first request a due process hearing." MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 535-36 (4th Cir. 2002) (citing 20 U.S.C. § 1415(f)). Bess merely applies a rule that requires exhaustion of all available federal administrative remedies as a prerequisite to a § 1983 action. See Alexandria Resident Council, Inc. v. Alexandria Redev. & Hous. Auth., 11 Fed. App'x 283, 286-87 (4th Cir. 2001) (per curiam) (recognizing that exhaustion is not required with respect to state administrative remedies, but is required in cases where federal administrative remedies are available). Here, because the defendants have not proposed that any federal administrative remedies were available to the Jacquezes, the holding in Bess is inapposite.

**FLUHARTY, ET AL. v. CITY OF CLARKSBURG, ET AL.**  1:14CV27

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Finally, any argument that Fluharty's RICO claim is barred by the Jacquezes' purported failure to exhaust state remedies is without merit. Courts have consistently rejected this contention out of hand. See Glickstein v. Sun Bank/Miami, N.A., 922 F.2d 666, 674 (11th Cir. 1991) ("The proposition that state 'exhaustion' rules could bar the federal RICO claims is not one that requires much discussion."); Dickson v. Chicago Allied Warehouses, Inc., No 90C6161, 1991 WL 60571, at *2 (N.D. Ill. Apr. 15, 1991) ("Plaintiffs correctly observe that there is no requirement that state remedies be exhausted before a RICO claim may be brought."); and Gunther v. Dinger, 547 F. Supp. 25, 27 (S.D.N.Y. 1982) ("The argument is frivolous on its face.").

## IV. CONCLUSION

After carefully considering the issues argued by the parties, for the reasons discussed, the Court **DENIES** the defendants' motion to dismiss the second amended complaint.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: May 14, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE