IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


THOMAS H. FLUHARTY, in his
official capacity as Bankruptcy
Trustee, THOMAS J. JACQUEZ, and
DIANA R. JACQUEZ,

        Plaintiffs,

v.                          //    CIVIL ACTION NO. 1:14CV27
                                  (Judge Keeley)

CITY OF CLARKSBURG, JAMES C. HUNT,
MARGARET H. BAILEY, MARTIN G. HOWE,
ADAM BARBERIO, H. KEITH KESLING, and
JONATHAN R. DAVIS,

        Defendants.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168,
AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE

        Pending before the Court are competing motions for summary
judgment filed in this case. For the reasons that follow, the Court
**GRANTS** the defendants' motions for summary judgment (Dkt. Nos. 158;
160; 162; 164; 166; 168; 170), **DENIES** the plaintiffs' motion for
partial summary judgment (Dkt. No. 157), and **DISMISSES** this case
**with prejudice.**

I. BACKGROUND

        On May 31, 2013, the plaintiffs, Thomas J. Jacquez ("Mr.
Jacquez") and Diana R. Jacquez ("Mrs. Jacquez") (collectively, the
"Jacquezes"), filed a petition for bankruptcy in the Northern
District of West Virginia, which identified as an asset a lawsuit

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

against the City of Clarksburg ("City") for wrongful seizure (No. 1:13-bk-686, Dkt. No. 1 at 13). After the Bankruptcy Court appointed Thomas H. Fluharty ("Fluharty") as trustee, he and the Jacquezes filed this case on February 17, 2014 (Dkt. No. 1).

The Jacquezes owned a number of properties in the City, which they rented to "largely low income, elderly and disabled tenants." (Dkt. No. 65 at 4). The complaint alleges that the City and its employees amended and enforced its building code in violation of West Virginia law and in a manner that deprived the Jacquezes of their constitutional rights. Id. at 7. Moreover, they allege that certain City employees, also defendants in this case, stood to benefit financially and politically from the resulting unlawful demolition of residential properties, including those owned by the Jacquezes. Id. at 2.

A.   **Factual Background**

In 2000, the West Virginia Housing Development Fund ("WVHDF") allocated funding for a Demolition Loan Program ("DLP") designed to "provide municipalities with financial resources to demolish older, residential rental properties, many of which were being subsidized under various HUD programs." Id. at 13 (internal quotation

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168,
AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE

omitted). At that time, James C. Hunt ("Hunt") was an elected member of the City Council, Director of the DLP, and the WVHDF area manager responsible for projects in the City. In the ensuing years, he and City Manager Martin G. Howe ("Howe") applied for and received loans from WVHDF for the City totaling $1,450,000. Id. at 7, 15-16. In June 2001, the City assigned its loan obligations to the Clarksburg Urban Renewal Authority ("CURA"); in turn, CURA created the Urban Renewal Plan for Demolition of Dilapidated Residential Structures for the City of Clarksburg (the "Urban Renewal Plan"). Id. at 16.

The plaintiffs have alleged that, from 1990 to 2014, the City amended and maintained its building code ordinances in a manner that failed to comply with the West Virginia State Building Code. The City brought about this nonconformity by (1) authorizing Howe, rather than the City Council, to appoint members to the Building Code Appeals Board ("BCAB"); (2) reducing the membership of BCAB from five to three members; (3) granting building inspectors unreasonable right of entry and inspection; (4) blocking the opportunity for property owners to repair their properties while under a demolition order; and (5) ceasing to give notice of the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

City's right to file a lien against any property subject to code enforcement action. Id. at 19.

According to the plaintiffs, the City's code enforcement employees were not trained, qualified, or certified in accord with West Virginia law, a fact that should have been known to the defendants. Between April 2010 and March 2013, building code official Adam Barberio ("Barberio") and his two subordinate building inspectors, H. Keith Kesling ("Kesling") and Jonathan R. Davis ("Davis"), issued various citations and notices to the Jacquezes and condemned six of their properties. Allegedly, these actions violated the State Building Code, and the defendants relied on false and misleading claims of building code violations. Id. at 24.

**B.    Related Proceedings**

In December 2013 and January 2014, the Jacquezes and several other affected property owners filed complaints against the defendants with the West Virginia State Fire Commission ("Fire Commission"), which regulates building code officials and inspectors and determines priority when a municipal ordinance conflicts with the State Building Code. See W. Va. Code § 29-3-5b.

4

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

In June 2014, the Fire Commission issued a "Consolidated Complaint and Notice of Hearing" against the City, Barberio, Kesling, and Davis (Dkt. No. 65 at 26).

The Consolidated Complaint alleged that these defendants "knowingly utilized an unlawful building code, through the actions of unlawful [building code officials], to selectively target specific properties and property owners, to divest them of real and personal property without adequate due process of law" (Dkt. No. 65-1 at 5). Additionally, the defendants "utilized the Clarksburg building code program to directly and/or indirectly enrich themselves and others through the use of public funds and the unlawful building code program." Id.[1]

Shortly thereafter, the City fully adopted the State Building Code, as the Fire Commission alleged was its duty (Dkt. No. 174-3 at 7). The individual defendants later agreed to entry of consent orders in which they denied wrongdoing but voluntarily surrendered their state certifications as Building Code inspectors (Dkt. No. 174-5 at 5). The City then obtained a writ of prohibition from the

---

[1] The plaintiffs have adopted the Fire Commission's allegations of fact and conclusions of law in their second amended complaint. (Dkt. No. 65 at 27).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

Circuit Court of Kanawha County on April 21, 2016, which declared that the Fire Commission did not have jurisdiction to monitor the City's compliance with due process (Dkt. No. 174-5).

During the same time period, a plaintiff other than the Jacquezes challenged the City's compliance with the State Building Code. In Old Home Properties, LLC v. City of Clarksburg, No. 14-0928, 2015 WL 7628719 (W. Va. 2015), the Supreme Court of Appeals of West Virginia held that W. Va. Code § 29-3-5b(c) clearly contemplates that municipalities may implement more stringent standards than the State Building Code. It also reasoned that the Fire Commission, not the courts, should determine whether ordinances impermissibly deviate from the State Building Code. Id. at *13-*14. Moreover, it concluded that any procedural challenge to the City's ordinances, which were enacted in 2003 and 2009, respectively, was barred by the doctrine of laches and public policy. Id. at *4.

C.   **Procedural Background**

The plaintiffs filed this action on February 17, 2014 (Dkt. No. 1). Their second amended complaint asserted five causes of action (Dkt. No. 65), three of which involved claims arising under

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

42 U.S.C. § 1983, but alleging different theories of liability. These included municipal liability ("Count One"); official, individual, and supervisory liability ("Count Two"); and conspiracy liability ("Count Three"). Count Four alleged liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Finally, Count Five sought a declaratory judgment that "the amount of $11,251.81 and any other sum assessed . . . for demolition costs, assessments, and fines by Defendant Clarksburg is improper, unlawful, and not due and owing." Id. at 41.

On October 7, 2016, the parties stipulated to the dismissal of Count Two as it related to the individual liability of defendants Barberio, Kesling, and Davis, as well as the entirety of Count Four (Dkt. No. 156). On October 8, 2016, the plaintiffs filed a motion for partial summary judgment on Count One as it relates to the Jacquezes' demolished property formerly located on Hamill Avenue (Dkt. No. 157). In the main, they contend that the defendants deprived the Jacquezes of their procedural due process right to notice and a hearing before a lien was imposed on the property for costs incurred by the City to demolish it.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

On October 14, 2016, each of the defendants moved separately for summary judgment on all of the plaintiffs' claims (Dkt. Nos. 158; 160; 162; 164; 166; 168; 170). Among other things, they argue that the statute of limitations bars this suit in its entirety, and that the plaintiffs have not established a violation of their constitutional rights.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

Title 42 U.S.C. § 1983 provides a remedy for those who suffer a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by one acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." "The essential elements to be proved in any section 1983 action are (1) that the defendant was acting under color of state law in the actions complained of; and (2) that the defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." Clark v. Link, 855 F.2d

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

156, 161 (4th Cir. 1988) (citing <u>Briley v. California</u>, 564 F.2d 849, 853 (9th Cir. 1977)).

Section 1983 is available to plaintiffs even if they could have sought vindication of their rights through the enforcement of a state constitution or statute. "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." <u>Zinermon v. Burch</u>, 494 U.S. 113, 124 (1990) (quoting <u>Monroe v. Pape</u>, 365 U.S. 167, 183 (1961)).

Pursuant to the Fourteenth Amendment, a State may not "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 2.[2] A cognizable claim that one's due process rights have been violated depends first upon whether one possessed a protected interest. <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976).

---

[2] The plaintiffs alleged that Barbario, Kesling, and Davis violated the Jacquezes' Fourth Amendment rights by "enter[ing] their properties without their consent using 'search warrants' issued by the municipal judge under Article 1705.04" (Dkt. No. 65 at 30). The only alleged instances fall outside the statutory period. <u>See</u> W. Va. Code § 55-2-12. In addition, the plaintiffs appear to have abandoned this claim (Dkt. No. 196 at 13).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

There can be no dispute that the Jacquezes have a constitutionally protected interest in their real property. The "valuable rights of ownership" include "the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents." United States v. James Daniel Good Real Prop., 510 U.S. 43, 54 (1993). In addition, "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protections." See Connecticut v. Doehr, 501 U.S. 1, 12 (1991).

Whether the City and its employees complied with the West Virginia Code or the State Building Code is not relevant to this case. "[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.' The answer to that question is not to be found in" in state or local law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (internal citation omitted). Due process requires that a deprivation of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Id. at 542 (quoting Mullane

v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).[3] A
violation of the right to procedural due process "arises not upon
the occurrence of a deprivation but rather the failure of due
process in connection with the deprivation." Snider Int'l Corp. v.
Town of Forest Heights, Md., 739 F.3d 140, 149 (4th Cir. 2014)
(citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"[D]ue process is flexible and calls for such procedural
protections as the particular situation demands." Mathews, 424 U.S.
at 334. "The process due in any given instance is determined by
weighing 'the private interest that will be affected by the
official action' against the Government's asserted interest." Hamdi
v. Rumsfeld, 542 U.S. 507, 529 (2004) (quoting Mathews, 424 U.S. at
335). A number of factors affect this determination:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved

---

[3] The Court perceives that the plaintiffs initially may have
been attempting to prove a claim of substantive due process. See
Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 827 (4th Cir.
1995). They allege to have been "targeted for arbitrary, unlawful
building code enforcement actions" (Dkt. No. 65 at 29-30). However,
at a hearing on January 6, 2017, the plaintiffs advised that they
no longer intended to pursue this claim (Dkt. No. 198).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

> and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 335.

Procedural due process thus entitles one to "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Jones v. Flowers, 547 U.S. 220, 226 (2006) (quoting Mullane, 339 U.S. at 314). "Failure to give notice violates 'the most rudimentary demands of due process of law.'" Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84 (1988) (citing Armstrong v. Manzo, 380 U.S. 545, 550 (1965)). "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance," but actual notice is not necessarily required. Mullane, 339 U.S. at 314 (citing Dusenbery v. United States, 534 U.S. 161, 170 (2002)).

"'The fundamental requisite of due process of law is the opportunity to be heard' . . . 'at a meaningful time and in a meaningful manner.'" Goldberg v. Kelly, 397 U.S. 254, 267 (1970) (quoting Armstrong, 380 at 552; Grannis v. Ordean, 234 U.S. 385, 394 (1914)). "An impartial decisionmaker is an essential element of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

due process." <u>Bowens v. N.C. Dep't of Human Res.</u>, 710 F.2d 1015, 1020 (4th Cir. 1983). Administrative decisionmakers are entitled to a presumption that they are honest and have integrity. <u>Morris v. City of Danville, Va.</u>, 744 F.2d 1041, 1044 (4th Cir. 1984). Actual bias presents clear constitutional issues. In addition, courts must also avoid the "probability of unfairness" that arises when an adjudicator has a direct or indirect pecuniary interest in the outcome. <u>Withrow v. Larkin</u>, 421 U.S. 35, 47 (1975); <u>Gibson v. Berryhill</u>, 411 U.S. 564, 579 (1973).

## IV. DISCUSSION

### A.   Overview

The claims in this case arise from allegations brought before West Virginia agencies and courts by both the plaintiffs and parties to related cases, in which a consistent theme was the City's alleged failure to comply with West Virginia law (Dkt. Nos. 1-3; 65-1). In this case, the plaintiffs contend that the City's actions deprived them of due process (Dkt. No. 65 at 29-30). Consequently, it is important to take note at the outset of the well-established rule that a violation of state law cannot form the basis of a § 1983 action. <u>Clark</u>, 855 F.2d at 161. In order to succeed on their claims here, the plaintiffs must prove the

14

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

violation of a federal right. Id. The Constitution does not guarantee compliance with state law, but rather provides for a baseline of procedural safeguards prior to property deprivation. See Loudermill, 470 U.S. at 542; Mathews, 424 U.S. at 335.

The Jacquezes' ownership interest in their real property plainly entitled them to due process. James Daniel Good, 510 U.S. at 54; Doehr, 501 U.S. at 12. Nonetheless, it is clear that most of the constitutional violations alleged by the plaintiffs fall outside the applicable statute of limitations. Moreover, for those actions that fall within the statutory period, the Jacquezes have not met their burden to establish a dispute of material fact regarding their due process and conspiracy allegations.

**B.    Statute of Limitations**

Section 1983 provides a federal cause of action, but it looks to state law to establish the applicable statute of limitations. See Wallace v. Kato, 549 U.S. 384, 387 (2007). Under West Virginia Code § 55-2-12, the period within which to bring a claim for personal injury is two years.[4] "The applicable statute of

_____

[4] In a brief footnote, the plaintiffs direct the Court's attention to W. Va. Code § 55-2-18(a), suggesting that they are entitled to an additional year after their state court case against the City was involuntarily dismissed on August 26, 2013 (Dkt. No.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

limitations begins to run once a claim accrues, and federal law controls that determination." A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)).

---

176 at 15 n.2). That code section provides:

> For a period of one year from the date of an order dismissing an action or reversing a judgment, a party may refile the action if the initial pleading was timely filed and: (i) the action was involuntarily dismissed for any reason not based upon the merits of the action; or (ii) the judgment was reversed on a ground which does not preclude a filing of new action for the same cause.

This "savings statute" should be liberally construed "to save one, who has brought his suit within the time limited by law, from loss of his right of action by reason of accident or inadvertence." Vincenzo v. AIG Ins. Servs., Inc., 288 Fed. App'x 875, 878 (4th Cir. 2008) (quoting Tompkins v. Pac. Mut. Life Ins. Co., 44 S.E. 439, 441 (1903)). However, "a dismissal of an action which will save a second action from the effects of a statute of limitations must not be the result of voluntary action on the part of the plaintiff, or must not amount to an abandonment of the action by the plaintiff." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 476 (4th Cir. 2005) (quoting Henthorn v. Collins, 118 S.E.2d 358, 360 (W. Va. 1961)). The state case was dismissed from the active docket for statistical purposes as a result of the Jacquezes' voluntary Chapter 7 bankruptcy filing, and pursuant to the dismissal order, they were entitled to reinstate the case upon discharge (Dkt. No. 1-3). Instead, they chose to file this lawsuit (No. 1:13bk686, Dkt. No. 23). Because those voluntary decisions amount to an abandonment of the state case, they may not take advantage of the savings statute. See Dean, 395 F.3d at 476.

16

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

"A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (internal quotation omitted). This occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc). In other words, "a federal cause of action accrues upon inquiry notice." Id. If the common law provides a "distinctive rule" other than this, a court must consider it. Owens v. Baltimore City State's Attorneys' Office, 767 F.3d 379, 389 (4th Cir. 2014).[5]

As this Court recently discussed in Hall v. City of Clarksburg, the plaintiff may establish a continuing violation that tolls the statute of limitations if "the unconstitutional or illegal act was a fixed and continuing practice" that occurred "in

---

[5] The plaintiffs point to the "distinctive rule" that a litigant must exhaust his administrative remedies before proceeding in court. Bank of Wheeling v. Morris Plan Bank & Trust Co., 183 S.E.2d 692 (W. Va. 1971). However, the Fire Commission does not have jurisdiction to bring actions directly against a municipality regarding its compliance with the strictures of due process (Dkt. No. 174-5 at 11-12). The Fire Commission proceedings also cannot be considered a part of the relevant "procedural safeguards built into the statutory or administrative procedure effecting the deprivation," which the Court analyzes in a due process challenge. Zinermon, 494 U.S. at 125-26.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

a series of separate acts." No. 1:14cv90, 2016 WL 5680218 (quoting A Society Without a Name, 655 F.3d at 348) (internal quotation omitted). "The limitations period begins anew with each violation." Id. However, "continuing ill effects of an original violation . . . do not constitute a continuing violation." Id.

The critical issue here is when the plaintiffs knew or had reason to know of their procedural due process claims. A Society Without a Name, 655 F.3d at 348. Because this case was filed on February 17, 2014 (Dkt. No. 1), the statute of limitations encompasses only those causes of action that accrued on or after February 17, 2012. W. Va. Code § 55-2-12. Most of the alleged wrongdoing in this case occurred prior to that date. The plaintiffs reference code enforcement that the City carried out between April 14, 2010, and March 13, 2013 (Dkts. No. 65 at 20-22; 172-8). In each instance that the Jacquezes allegedly were subject to code enforcement activity and deprivation of property prior to February 17, 2012, they knew or had reason to know at the time of the defendants' actions of alleged deficiencies in the notice they received or their opportunity to present objections.

Nonetheless, the plaintiffs argue that their due process cause of action could not have accrued until later. This assertion is

based primarily on ancillary state proceedings that bear no relation to the constitutional sufficiency of the notice and hearing procedure provided to them.[6] Moreover, alleged violations of state law, or when the plaintiffs knew about such violations, simply have no effect on when a cause of action under § 1983 accrued. The constitutional sufficiency of the procedural safeguards provided to the Jacquezes is not tied to compliance with state law except in certain circumstances. Loudermill, 470 U.S. at 541; Jones v. Bd. of Governors, 704 F.2d 713, 717 (4th Cir. 1983).

The only relevant argument the plaintiffs have in this regard is that they had no reason to know that Ralph Pederson ("Pederson"), a BCAB member until 2011, had an alleged conflict of interest related to his employment with the WVHDF (Dkt. No. 174 at 17). However, Mr. Jacquez testified that he first believed he had been subjected to unlawful conduct when BCAB denied his Hamill Avenue appeal in 2010 (Dkt. No. 175-1 at 2). That he chose not to

---

[6] The plaintiffs argue that their due process cause of action could not have accrued prior to a variety of dates tied to the defendants' compliance with state law, such as when Mr. Jacquez filed his complaints with the Fire Commission, when the City fully adopted the State Building Code, when the Fire Commission resolved its complaint, or when Judge Bailey entered her Order Granting Writ of Prohibition (Dkt. No. 176 at 7-10, 12-14).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

investigate the composition of BCAB until later does not obviate the fact that he "possesse[d] sufficient facts about the harm done to him that reasonable inquiry [would have] reveal[ed] his cause of action." Nasim, 64 F.3d at 955. Indeed, Mr. Jacquez knew "that he ha[d] been hurt and who inflicted the injury." Id.[7] Therefore, in the absence of any convincing argument to the contrary, the Court finds that inquiry notice bars any due process claim regarding code enforcement actions prior to February 17, 2012.

The following code enforcement actions took place within the statutory period, on or after February 17, 2012 (Dkt. No. 65 at 20-22; 172-8 at 12):

---

[7] In any event, it is not clear that Pederson's membership on BCAB in 2010 would have made the Hamill Avenue hearing constitutionally deficient. The plaintiffs have alleged that, at the time he was a member of BCAB, Pedersen was also employed by the WVHDF, which loaned money to the City for its demolition program (Dkt. No. 65 at 15-16). Howe testified that Pedersen resigned from BCAB after WVHDF raised concerns about a conflict of interest (Dkt. No. 172-20). Despite this testimony, there is no evidence that Pedersen stood to profit from the BCAB proceedings in which he was involved. Unlike cases where the Supreme Court has expressed concern, see Tumey v. Ohio, 273 U.S. 510 (1927), there is no indication that affirming adverse code enforcement against the Jacquezes would have resulted in direct or indirect pecuniary gain such that ruling against the Jacquezes would be a "possible temptation." Caperton v. Massey Coal Co., Inc., 556 U.S. 868, 878 (2009) (quoting Ward v. Monroeville, 409 U.S. 57, 60 (1972)).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

- February 17, 2012:  Notice to Show Cause issued at 210 Virginia Avenue; Citation at 123-125 Denham Street

- February 21, 2012:  Notice of Violation at 446 Lee Avenue

- February 27, 2012:  Demolition of 661 Mulberry Avenue

- March 1, 2012:  Citation at 121-121 ½ Denham Street

- March 19, 2012:  Demolition of 1513-1515 Hamill Avenue

- April 2, 2012:  Invoice for the cost of demolishing 1513-1515 Hamill Avenue

- March 13, 2013:  Notice of Violation and Condemnation Order at 121-121 ½ Denham Street

These actions within the statutory period, however, are all properly characterized as the ongoing effect of alleged insufficient procedure or unlawful ordinance amendment that took place before February 17, 2012. First, the demolition of property at Mulberry Avenue and Hamill Avenue, as well as the invoice for costs of demolition associated with the property on Hamill Avenue, are unquestionably the ongoing ill effects of alleged procedural deficiencies in 2010. See A Society Without a Name, 655 F.3d at 348. Code enforcement action against the Mulberry Avenue property included notices of violation and condemnation orders issued on July 23 and August 31, 2010 (Dkt. No. 65 at 21). Although those notices informed the Jacquezes of their right to appeal and how to

pursue it,[8] the Jacquezes chose not to do so. Likewise, the
property on Hamill Avenue was the subject of citations, notices,
condemnation orders, and demolition orders in 2010. At that time,
Mr. Jacquez appealed to BCAB, which upheld the demolition order on
July 21, 2010 (Dkt. No. 172-12 at 24).

Moreover, when BCAB upheld the demolition order regarding the
Hamill Avenue property in 2010, the ordinances imposed a duty upon
the Jacquezes to demolish the property or pay the costs of
demolition (Dkt. No. 172-4 at 13). This included the City's right
to place a lien on the property for monies expended in connection
with demolition. Id. Thus, the imposition of demolition costs in
2012 was the direct effect of BCAB's final decision in 2010 that
the property should be demolished. The Jacquezes were indeed
entitled to receive notice and a hearing regarding this
deprivation, Doehr, 501 U.S. at 12, which they, in fact, did
receive (Dkt. No. 172-12).

The Jacquezes thus "possesse[d] sufficient facts about the
harm done . . . that reasonable inquiry" would have revealed their

_____

[8] The form notices of violation issued at Hamill Avenue during
that same time period are contained within the record and give such
notice of appeal rights (Dkt. No. 172-12).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

cause of action regarding Mulberry Avenue and Hamill Avenue prior to the statutory period. Nasim, 64 F.3d at 955. They cannot complain in 2014 about the sufficiency of procedures they were provided in 2010, even if demolition or lien imposition occurred later. See A Society Without a Name, 655 F.3d at 348.

Finally, any contention that the remaining citations, notices of violation, or condemnation orders did not comply with state law fails as an ongoing effect of the ordinance amendments that took effect in 2009. See Hall, 2016 WL 5680218, at *5. Much like the plaintiff in Hall, the Jacquezes were on constructive notice of the amendments when enacted in 2009, and when the City thereafter took adverse code enforcement action against them.

**C.    Due Process Allegations**

To the extent that notices and orders issued during the statutory period may constitute new violations rather than ongoing effects, the plaintiffs have failed to establish a violation of their procedural due process rights. With the exception of the argument that the Jacquezes did not receive due process prior to a lien being imposed on their Hamill Avenue property, the Court has had difficulty discerning due process allegations that are not based solely on a violation of state law.

Indeed, in response to the defendants' assertions that there
is no evidence of a constitutional violation (Dkt. Nos. 159 at 21;
161 at 12-13; 163 at 9; 165 at 10; 167 at 17; 169 at 17; 171 at
16), the plaintiffs provide little support to the contrary.[9] A
review of the notices, orders, and hearing procedures in the record
convinces the Court that the City provided constitutionally
sufficient procedural safeguards.[10]

---

[9] Rather, they ask the Court to apply "the well-recognized
doctrines of equitable and judicial estoppel" to the defendants'
claim that there is no evidence of wrongdoing (Dkt. No. 174 at 11-
14) ("[The defendants] should not be permitted to 'play fast and
loose' with the record in this case and in the case resulting from
the Consolidated Complaint."). The Court, however, has been unable
to ascertain the extent of this argument, as the plaintiffs do not
point to any "false representation or a concealment of material
facts" that would necessitate the application of equitable
estoppel. See Syl. Pt. 3, Folio v. City of Clarksburg, 655 S.E.2d
143 (W. Va. 2007). Moreover, as to judicial estoppel, the Court has
not identified any clearly contrary positions taken by the
defendants. See Syl. Pt. 2, W. Va. Dept. of Transportation,
Division of Highways v. Robertson, 618 S.E.2d 506 (W. Va. 2005).

[10] Although the record does not contain each of the City's
alleged code enforcement actions against the Jacquezes' property,
it does contain examples of each form at issue (Dkt. No. 172-12).
The Court considers the record to fairly represent City action
taken during the statutory period. Despite the City's contention
that no constitutional violation has taken place, the plaintiffs
have not produced any additional documents (Dkt. No. 159 at 25).
Moreover, Kesling testified that the notices of violation in
particular did not change substantially over time (Dkt. No. 172-11
at 5-6).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

The City's Office of Code Enforcement made use of forms when it issued notices and orders to the Jacquezes.[11] When the City issued a citation, it was addressed to the owner or lessee and included the property at issue, the charge against it, the code violation alleged, and a time to appear in court (Dkt. No. 172-12 at 1). Likewise, the City's notice of violation form contained space to fill in the subject property's location as well as the name and address of the owner, lessee, or contractor to whom the notice was being issued. The building inspector filling out the form selected the type of "violation," which included 1) working without permits, 2) use and occupancy without inspection, 3) stop work order, or 4) a violation of a city code. If the final option was chosen, there were fields provided in which the inspector could specify the code violation and provide additional comments. The bottom of the form noted that a notice "issued pursuant to The Building, Zoning or Property Maintenance Code is subject to appeal"

---

[11] The plaintiffs allege that the City's forms did not contain all the information required by the State Building Code or even its own Building Code (Dkt. No. 65 at 31). Except for circumstances not applicable here, see Jones, 704 F.2d at 717, that fact is irrelevant to whether the Jacquezes received due process.

and directs the recipient to "[c]ontact the Building Inspection office for procedure." Id. at 4.

Condemnation or demolition orders issued by the City gave brief reasons for the action, such as "dilapidated dwelling," "unsafe dwelling," or "structural members rotten." Both condemnation and demolition orders also stated that the action was subject to appeal and directed the recipient to contact the Building Inspection office. Id. at 5, 7.

After receiving these communications from the City, the Jacquezes were capable of contacting the Building Inspection office or referencing the City's Building Code. At the relevant time, Building Code 1705.11 and 1720.05 allowed "[a]ny person aggrieved by a decision of the Building Inspector or his designated representative" to appeal to the three-member BCAB within 20 days of being served with a decision (Dkt. No. 172-4 at 13, 21). At the hearing, parties were permitted to appear in person, by agent, or by attorney. Id. at 21. BCAB had full authority to reverse, affirm, or modify the decision being appealed. Id. If BCAB made a decision adverse to the appellant, the Circuit Court of Harrison County had jurisdiction to hear a challenge to BCAB's decision. See W. Va.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

Code § 51-2-2; see also Green v. City of Clarksburg, No. 11-0421, 2011 WL 8197531, *1 (W. Va. 2011) (memorandum decision).

Here, the plaintiffs have failed to direct the Court to any evidence that the Jacquezes did not receive the various notices and orders issued against their properties. The City's forms informed the Jacquezes about the specific properties that were the subject of code enforcement action, and identified the basic nature of problems that the City alleged. This constituted "notice reasonably calculated, under all the circumstances, to apprise" the Jacquezes of the code enforcement action. Mullane, 339 U.S. at 314.

After reviewing the notices the Jacquezes received, the Court is unable to conclude that they were not apprised of "the pendency of the action." Id.; see also Lee v. City of Norfolk, 706 S.E.2d 330, 336-37 (Va. 2011). In addition, the hearing procedure described above provided the Jacquezes with "an opportunity to present objections" to BCAB and to appeal its decision through the court system. Mullane, 339 U.S. 314. Whether or not these procedures satisfy the strictures of state law, they undoubtedly suffice under the Constitution.[12]

---

[12] This same conclusion obtains with regard to the general procedures of the Notice to Show Cause issued on February 17, 2012,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168,
AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

## D.    § 1983 Conspiracy

Finally, even if the plaintiffs could establish a constitutional violation, they have failed to meet their burden to survive summary judgment on Count Three. In order to succeed on a claim of civil conspiracy under § 1983, the plaintiffs "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiffs'] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). On summary judgment, "[t]he non-moving party may not 'create genuine issue of material fact through mere speculation or the building of one inference upon another.'" Id. (quoting Beale v. Hardy, 769 F.2d

---

at the Jacquezes' Virginia Avenue property (Dkt. No. 1-20). The Notice informed Mr. Jacquez of a public nuisance petition filed against him and Mrs. Jacquez, and it provided the time at which he was required to appear before the City Council and contest the allegations. Id. at 5. Mr. Jacquez did not appear before the City Council, which ultimately decided to revoke his business license on March 1, 2012 (Dkt. No. 1-23). Mr. Jacquez testified that he was sick on that date, and there is a dispute concerning whether the municipal clerk may have misrepresented that he would be able to present objections at a later date if he decided not to attend (Dkt. Nos. 174 at 20; 175 at 9). Ultimately, however, this dispute is of no consequence, as the second amended complaint only alleges damages as a result of the defendants' deprivation of the Jacquezes' interest in their real property, not their business license (Dkt. No. 65 at 32, 34, 35).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

213, 214 (4th Cir. 1985)). The plaintiffs have the burden to prove the essential elements of their conspiracy claim, and at this stage, they must present evidence permitting a rational trier of fact to find that a conspiracy existed to deprive them of their constitutional rights. Id.

The plaintiffs have failed to proffer even a scintilla of actual evidence in support of their conspiracy allegations. See Anderson, 477 U.S. at 248-52. For instance, they offer Mr. Jacquez's belief "that the individual defendants, together with the Holyfields and Alastanos, were acting together as conspirators to benefit from Clarksburg's code enforcement" (Dkt. No. 174 at 19). Mr. Jacquez testified that he believed neighboring property owners had complained to the City so that his properties would be condemned, and the neighbors could then obtain the lots (Dkt. No. 174-4 at 46-47). However, aside from the observation that his properties and many others had been condemned as a part of an effort to enforce Clarksburg's ordinances, Mr. Jacquez was not aware of any meetings or concerted efforts constituting a conspiracy. Id. at 48-49. The plaintiffs also point to Fire Commission investigator Joseph Stiles' testimony that, based on a

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

perceived concerted effort to demolish certain homes, a conspiracy must have existed (Dkt. No. 161-1 at 10).

None of this is sufficient to support the "weighty burden" that the plaintiffs must meet on summary judgment. See Hinkle, 81 F.3d at 421. Other than the circumstantial observations that some residents wanted homes to be condemned, and that the City clearly had a program in place to accomplish demolition of dilapidated structures, no direct or compelling evidence was presented to support the proposition that a meeting of the minds existed, much less that the intention of that agreement was to deprive the Jacquezes of their constitutional rights. The evidence relied on by the plaintiffs "amounts to nothing more than rank speculation and conjecture. It does not reveal any member of this alleged conspiracy possessed an intent to commit an unlawful objective." Id. at 422.

## V. CONCLUSION

As discussed, the statute of limitations has run on the plaintiffs' claims. Moreover, the alleged constitutional violations identified by the plaintiffs are without merit, and there is insufficient evidence to establish that a conspiracy existed to deprive them of their rights. Therefore, the Court **GRANTS** all of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 158, 160, 162, 164, 166, 168, AND 170], DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 157], AND DISMISSING CASE WITH PREJUDICE**

the defendants' motions for summary judgment on all claims, **DENIES** the plaintiffs' motion for partial summary judgment, and **DISMISSES** this case **WITH PREJUDICE.**

It is so **ORDERED.**

The Court **DIRECTS** the Clerk of Court to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED: January 12 2017.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE